IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 23-31036 |
| | § | |
| PETE'S FINE MEATS, INC. | § | Chapter 11 |
| | § | |
| DEBTOR. | § | Subchapter V |
| | § | |

# DEBTOR'S PLAN OF REORGANIZATION

Pete's Fine Meats, Inc., the debtor-in-possession in the above-captioned bankruptcy case, propose this Plan of Reorganization.

TABLE OF CONTENTS


| | | |
|---|---|---|
| I. | Definitions | 1 |
| II. | Debtor's History | 3 |
| III. | Classification of Claims and Interest and Treatment | 6 |
| IV. | Liquidation Analysis and Projections | 8 |
| V. | Treatment of Executory Contracts and Unexpired Leases | 8 |
| VI. | Means for Execution of the Plan | 9 |
| VII. | Effect of Confirmation and Releases | 9 |
| VIII. | Discharge | 10 |
| IX. | Reservation of Rights | 10 |
| X. | General Provisions | 10 |


## I. DEFINITIONS

The following terms, when used in the Plan, shall, unless the context otherwise requires, have the following meanings, respectively:

1. "Administrative Claim" shall mean a Claim entitled to priority by 11 U.S.C. § 507(a)(2).

2. "Allowed Claim" shall mean, any Claim (a) that has been listed by the Debtor in their Schedule D or Schedule E/F [ECF Nos. 16-2 and 16-3] as liquidated in amount and not "disputed" or "contingent" and that has not been supplanted by a proof of claim filed by the scheduled Creditor in the Chapter 11 Case, (b) that is reflected by a timely proof of claim in the Chapter 11 Case to which no objection or request for estimation has been filed on or before the Effective Date, or (c) that has been allowed by a final order of the Court.

3. "Allowed __________ Claim" shall mean an Allowed Claim of the type described.

4. “Chapter 11 Case” shall mean the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Court and being administered under Case No. 23-31063.

5. "Claim" shall mean any claim (as that term is defined in 11 U.S.C. § 101(5)) against the Debtor.

6. "Class" shall mean any class into which Claims are classified in this Plan.

7. "Confirmation" shall mean the Court’s entry of an order confirming the Plan.

8. "Court" shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, presiding over the captioned bankruptcy case.

9. "Creditor" shall have the same meaning as its given by 11 U.S.C. § 101(10).

10. “Cruz” shall mean Michael Cruz, the sole shareholder of the Debtor.

11. “Debtor” or “Pete’s” shall mean Pete’s Fine Meats, Inc.

12. "Effective Date" shall mean the first date that it has sufficient cash to make all distributions due on the Effective Date, but no later than January 31, 2024.

13. “MCA” shall mean merchant cash advance agreement.

14. "Plan" shall mean this Plan of Reorganization in its present form or as it may be amended, altered, varied, or modified from time to time.

15. “Priority Claim” shall mean a Claim entitled to priority under 11 U.S.C. § 507(a)(3)-(8).

16. “Reorganized Debtor” shall mean the Debtor, as reorganized pursuant to this Plan.

17. “Released Party” shall mean: (a) the Debtor and its affiliates (as that term is defined in 11 U.S.C. § 101(2)); (b) the Reorganized Debtor and its affiliates (as that term is defined in 11 U.S.C. § 101(2)); (c) Cruz; and (d) with respect to each entity identified in clauses (a) and (c), their agents, attorneys, and insiders (as that term is defined in 11 U.S.C. § 101(31)).

18. “Releasing Party” shall mean: (a) the Debtor and their affiliates (as that term is defined in 11 U.S.C. § 101(2)); (b) the Reorganized Debtor and their affiliates (as that term is defined in 11 U.S.C. § 101(2)); (c) all holders of Claims and their affiliates (as that term is defined in 11 U.S.C. § 101(2)) entitled to vote under the Plan that vote to accept the Plan; (d) all holders of Claims and their affiliates (as that term is defined in 11 U.S.C. § 101(5)) who do not vote to accept the plan (whether because they vote to reject, abstain from voting, or are not entitled to vote) but do not affirmatively opt out of granting the releases set forth in section VII of the Plan by filing the opt-out election included with the ballot or notice of non-voting status with the Clerk of Court prior to the Voting Deadline; and (e) with respect to each entity identified in clauses (a)

through (d), their current and former officers, managers, directors, equity holders, agents, attorneys, and relatives (as that term is defined in 11 U.S.C. § 101(45)).

19. "Secured Claim" shall mean the Claim of any Creditor secured by a lien or liens on property of a Debtor, which lien and/or liens are valid, perfected, and enforceable under applicable law, and are not subject to avoidance under the Code or other applicable non-bankruptcy law, and are duly established in this case, to the extent of the value of the security, as determined in accordance with 11 U.S.C. § 506.

20. "Unsecured Claim" shall mean a claim that is not an Administrative Claim, an Apex Parties Claim, a Priority Claim, or a Secured Claim.

## II. DEBTOR'S HISTORY

### A. Nature of the Debtor's Business & Structure

Pete's is a butcher shop located in the Uptown area of Houston, Texas. Pete's is wholly owned by Cruz, who also serves as the President of Pete's and is Pete's head butcher. Pete's employs 3 individuals and utilizes 3 to 6 contract butchers depending on the day and season.

### B. History of the Debtor's Business Operations

Pete's traces its history back to Cruz's grandfather's opening of a butcher shop in 1932 but was not formally founded until Cruz's father opened Pete's in 1961. Pete's has since operated at the same location on the corner Richmond Avenue and Barrington Road in Houston, Texas. Cruz started as a butcher at Pete's upon graduating from high school in 1979 and acquired Pete's from his father in 1987.

Cruz has successfully run Pete's for 35 years. In that time, Pete's has developed a loyal customer base and a reputation for excellent meat and customer service. This has allowed Pete's to remain operational despite intense competition from grocery stores and warehouse club stores in the retail meat industry.

### C. Events Leading to the Chapter 11 Cases

Pete's historically breaks even most months and makes nearly all its income from October through February. This is due to increased sales of retail meat during the holiday season and the increased demand for meat processing during hunting season in Texas. Pete's historical net margins are less than 1%.

Beginning around 2020, Pete's began obtaining MCA financing to address cash flow shortfalls. Under the MCAs, Pete's allegedly sold its future receipts to MCA lenders for cash at a discount. The discount was usually around 30% (*i.e.,* the MCA would "purchase" $30,000 of future receipts for $20,000) but could be as high as 50% (i.e., the MCA would "purchase" $40,000 of future receipts for $20,000). Pete's would deliver these future receipts to the MCA lender in a specified daily amount that supposedly reflected a percentage of Pete's daily receipts (usually

between 5% and 15%, but sometimes as high as 45%) drawn from Pete's bank account by electronic funds transfer. The cost of each MCA Pete's obtained on an APR basis was over 100%.

Although the MCA financing provided immediate relief for Pete's liquidity issues, it exacerbated Pete's liquidity issues going forward. The daily collections under the MCAs were far greater than Pete's margins, and thus rendered Pete's unable to timely meet its obligations both under the MCAs and to other creditors of Pete's, including its trade vendors and landlord. To remedy these liquidity issues, Pete's would then obtain further MCA financing.

By late March 2023, Pete's was paying over $5,000 weekly to MCA lenders, had no insurance, was facing numerous lawsuits from vendors and utility providers for unpaid goods and services, could obtain no credit, and had essentially no free cash. Pete's determined it could not continue operating under these conditions and decided that a chapter 11 reorganization under subchapter V of the Bankruptcy Code was in the best interest of its creditors.

### D. Filing of the Chapter 11 Cases

On March 27, 2023, Pete's filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and made a subchapter V election. The Chapter 11 Case is pending in the Court in Houston, Texas.

### E. Debtor's Assets and Liabilities

The Debtor's Assets and Liabilities are described in detail in their Schedules [ECF No. 16]. Additionally, a liquidation analysis is included as **Exhibit A** to the Plan.

#### E.1 Debtor's Assets

As of May 31, 2023, the Debtor has assets with a value of approximately $85,000: $9,119.48 in cash, approximately $47,500 in inventory, and $30,000 in meat processing equipment.

The Debtor has investigated potential claims against third parties, including claims arising under the avoidance powers granted to the Debtor under 11 U.S.C. §§ 544-552. Based on this investigation, the Debtor may have colorable claims against several MCA lenders for fraudulent transfers, against Debt Savvy for a preference, and against Sundaise LLC arising out of its lease.

#### E.2 Debtor's Liabilities

Pete's has pre-petition, non-contingent liabilities totaling approximately $200,000, as reflected in the table below.

| Creditor Name | Amount of Claim | Source |
|---|---|---|
| Action Meat Distributors, Inc. | $12,000.00 | Schedule E/F (ECF No. 16-3), 3.2 |
| Apex Energy Solutions, LLC | $27,000.00 | Schedule E/F (ECF No. 16-3), 3.3 |
| Centerpoint Energy | $1,396.10 | Claim No. 2-1 |
| Charlie's Plumbing, Inc. | $29,594.32 | Claim No. 8-1 |
| Goat Advance LLC | $7,666.65 | Schedule E/F (ECF No. 16-3), 3.9 |
| Harris County, et al. | $7,122.89 | Claim No. 1-1 |
| Kean Miller LLP | $5,000.00 | Schedule E/F (ECF No. 16-3), 3.12 |
| Linz, Inc. d/b/a Meats by Linz | $15,000.00 | Schedule E/F (ECF No. 16-3), 3.13 |
| Pro Valley Foods LLC | $2,260.69 | Claim No. 3-1 |
| Prosperity Bank | $2,225.14 | Claim No. 4-1 |
| Summer Energy, LLC | $57,279.50 | Schedule E/F (ECF No. 16-3), 3.18 |
| Sysco Corporation | $26,231.68 | Claim No. 5-1 |
| Texas Comptroller | $4,434.42 | Claim No. 7-1 |
| US Foods, Inc. | $4,947.99 | Claim No. 9-1 |

### F. Current and Historical Financial Condition

Pete's historical financial performance is provided in the table below.

| Period | Revenue | Expense | Net Income |
|---|---|---|---|
| 2022 | $1,960,178 | $1,941,892 | $18,286 |
| 2021 | $1,993,393 | $1,974,600 | $18,793 |
| 2020 | $2,376,753 | $2,358,792 | $17,961 |
| 2019 | $1,525,405 | $1,531,858 | -$6,453 |

The Debtor's detailed financial results since commencing the Chapter 11 Cases are available in its Monthly Operating Reports [ECF Nos. 23, 24, 26]. Projections of the Debtor's future performance are included as **Exhibit B** to the Plan.

### G. Significant Events During the Chapter 11 Cases

Upon commencing this Chapter 11 Case, Pete's focus was complying with the requirements of the Bankruptcy Code. To that end, Pete's opened a debtor-in-possession deposit account, obtained the required insurance, timely filed its Schedules [ECF No. 16] and Statement of Financial Affairs [ECF No. 17], and appeared for its initial debtor interview and meeting of creditors. It has also worked to establish accounting procedures so that it can remain current on critical obligations like insurance and taxes.

On or about May 1, 2023, the Debtor discovered that online food ordering services Uber Eats and DoorDash were withholding sales from the Debtor based upon pre-petition collection actions initiated by certain MCA Lenders. The Debtor worked closely with Uber Eats and Door Dash and their payment processor Stripe to release prior sales to the Debtor and ensure that future sales were immediately deposited in the Debtor's debtor-in-possession deposit account. On May 9, 2023, Uber Eats deposited $7,920.84 in the Debtor's debtor-in-possession deposit account for prior sales, and on May 17, 2023, DoorDash deposited $2,191.36 in the Debtor's debtor-in-

possession account for prior sales. The Debtor now receives sales from Uber Eats and Door Dash as they occur and does not believe there are any prior sales outstanding.

## III. CLASSIFICATION OF CLAIMS AND INTERESTS AND TREATMENT

### A. Summary

All Claims and equity interests in the Debtor are placed in the Classes set forth below. The Plan places Claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or equity interests is impaired or unimpaired. A Claim or equity interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants or equity holders are otherwise entitled. If the Plan is confirmed, each Creditor's and equity holder's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of equity interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed equity interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

### B. Class 1 – Non-Voting Claims

B.1 Class 1A – Court Approved Professionals.

Class 1A consists of the Allowed Administrative Claims held by the Debtor's attorneys, subchapter V trustee Drew McManigle, and any other professionals whose employment was approved by the Court prior to the Effective Date and whose fees for services rendered and expenses incurred are approved by the Court under 11 U.S.C. § 330.

All Claims in this Class shall receive either: (a) cash in the full amount of the Claim on the Effective Date, or (b) any other less favorable treatment that a holder of a Class 1A Claim may agree to with the Reorganized Debtor.

**Any Creditor asserting an Administrative Claim under § 503(b)(2) (*i.e.,* a Class 1A Claim), must file an application for compensation under § 330 within 30 days of Confirmation.**

This Class is not entitled to vote, its treatment is mandated by the provisions of §§ 1129(a)(9) and 1191(a).

For the avoidance of doubt, upon Confirmation, the Reorganized Debtor may employ professionals without seeking Court approval under § 327 and may pay professionals employed post-Confirmation without receiving Court approval under § 330.

B.2 Class 1B – Other Administrative Claims.

Class 1B consists of all Allowed Administrative Claims that are not Class 1A Claims. All Class 1B Claims shall receive either: (a) cash in the amount of their Claim on the Effective Date or within five (5) business days of the date on which the Claim becomes an Allowed Claim, or (b) any other less favorable treatment that a holder of a Class 1B Claim may agree to with the Reorganized Debtor.

**Any Creditor asserting an Administrative Claim, other than Administrative Claims under 11 U.S.C. § 503(b)(2) (*i.e.,* a Class 1B Claim), must file an application for Administrative Claim within 30 days of the Effective Date.**

This Class is not entitled to vote, its treatment is mandated by the provisions of §§ 1129(a)(9) and 1191(a).

B.3 Class 1C – Priority Claims & Secured Tax Claims.

Class 1C consists of all Allowed Priority Claims and any Allowed Secured Claims that would otherwise meet the description of a Priority Claim under 11 U.S.C. § 507(a)(8). All Class 1C Claims that are due and payable on the Effective Date shall receive either: (a) cash in the amount of their Claim on the Effective Date or within five (5) business days of the date on which the Claim becomes an Allowed Claim, or (b) any other less favorable treatment that a holder of a Class 1C Claim may agree to with the Reorganized Debtor.

All Class 1C Claims that are yet not due and payable on the Effective Date shall be paid by the Reorganized Debtor in the ordinary course.

Notwithstanding anything in this Plan or in the Confirmation Order to the contrary, Harris County's allowed secured tax claim shall accrue interest at the rate of twelve percent (12%) per annum from the Petition Date until the tax debt is paid in full. Additionally, any and all ad valorem tax liens securing the pre and post-petition taxes will be retained until all such taxes are paid in full. The Reorganized Debtor shall pay all postpetition taxes (tax year 2024 and subsequent) in the ordinary course of business and prior to delinquency under Texas law without the need of Harris County to file an administrative expense claim and/or request for payment. The failure to pay any postpetition ad valorem taxes on property it still owns shall be considered a default under this Plan. In the event postpetition taxes are not paid prior to delinquency as required under Texas laws, penalties and interest shall accrue as provided under such laws and Harris County is authorized to immediately commence any and all collection actions authorized under Texas laws, in state court without further notice of this Court.

This Class is not entitled to vote, its treatment is mandated by the provisions of 11 U.S.C. §§ 1129(a)(9) and 1191(a).

**C. Class 2 – Unsecured Claims:**

Class 2 consists of all Allowed Unsecured Claims against the Debtor.

All Claims in this Class shall receive their *pro rata* share of $126,000.00, which shall be distributed over a period of three years. Distributions shall begin on the last day of the first quarter after the Effective Date (i.e., March 31, June 30, September 30, or December 31). Each distribution shall be $3,000.00, except for distributions made in December. Distributions made in December shall be $33,000.00. Each holder of a Class 2 Claim will receive their *pro rata* share of each distribution.

In the event the Reorganized Debtor is unable to make the full quarterly payment required to Class 2, it may pay any unpaid amount during the succeeding two quarters. Such a delay in payment does not constitute a default under the Plan.

Class 2 is impaired and is entitled to vote.

**D. Class 3 – Equity Interests**

Class 3 consists of the Debtor's sole equity holder, Cruz. Cruz shall retain his interests in the Reorganized Debtor.

Class 3 is not an impaired class and is deemed to accept the Plan.

## IV. LIQUIDATION ANALYSIS & PROJECTIONS

A liquidation analysis for the Debtor is included in this Plan as **Exhibit A**. Projections of the Debtor's future performance are included as **Exhibit B**.

Under this Plan, the Debtor's creditors are receiving an approximately 66% distribution on their Claim. If the Debtor were to liquidate, however, the Debtor believes its Unsecured Creditors would receive less than 5%. Thus, the amount that Creditors would receive in a chapter 7 liquidation is less than each will receive under this Plan. Accordingly, this Plan is in the best interest of Creditors as required under 11 U.S.C. § 1129(a)(7).

Moreover, the Debtor expects to have sufficient future income to perform under the Plan. Accordingly, the Plan satisfies the "feasibility" requirements under § 1129(a)(11).

## V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All the executory contracts and unexpired leases listed on the Debtor's Schedule G [ECF No. 16-4] shall be assumed by the Debtor upon the Confirmation Date. Additionally, all other executory contracts the Debtor is a party to are being assumed upon Confirmation.

Based on the Debtor's books and records, there are no defaults on the executory contracts it intends to assume. **If any party objects to the assumption of its unexpired lease or executory contract, it must file and serve its objection to the assumption within the deadline for objecting to Confirmation.**

## VI. MEANS FOR EXECUTION OF THE PLAN

The Reorganized Debtor will continue to operate the Debtor's business and are authorized to take any actions they deem necessary to operate the Reorganized Debtor.

Cruz shall be the President of the Reorganized Debtor on and after the Effective Date.

If the Plan is confirmed under 11 U.S.C. § 1191(a), payments provided for in the Plan will be made by the subchapter V trustee Drew McManigle pursuant to § 1194(a). Once the Trustee's service is terminated under § 1183(c), the Reorganized Debtor shall make Plan payments.

If the Plan is confirmed under § 1191(b), the subchapter V trustee Drew McManigle shall make all Plan payments under the Plan.

## VII. EFFECT OF CONFIRMATION AND RELEASES

All consideration provided pursuant to this Plan shall be in exchange for and in complete satisfaction and release of all Claims of any nature whatsoever against the Debtor and Reorganized Debtor and any property of the Debtor and Reorganized Debtor pursuant to this Plan and except as otherwise provided in the Plan. Upon Confirmation, all property of the Debtor and Reorganized Debtor, tangible and intangible, will be free and clear of all Claims, liens, charges, and any other encumbrances, except as provided in the Plan. The provisions of the Plan shall bind all Creditors of the Debtor, even if the Creditor did not accept this Plan. The rights and obligations of any entity affected under this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**Upon Confirmation, all Creditors scheduled by the Debtor may not take any act to commence or continue any judicial, administrative, or other legal action or proceeding against Cruz, may not take any act to collect, assess, or recover any Claims against Cruz, and may not seek to enforce any Claims they may hold against Cruz until the earlier of: 1) the completion of the payments provided to Class 2, or 2) a default under the Plan.**

**Upon the Effective Date, all holders of Claims are conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each Released Party from all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, whether existing now or hereafter arising, in law, equity, contract, tort or otherwise; except each Released Party shall not release any claims relating to actual fraud, willful misconduct, or gross negligence.**

**Upon the Effective Date, each Released Party is conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each Releasing Party from all Claims, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, whether known our known, foreseen or unforeseen, matured or unmatured, whether existing now or hereafter arising, in law, equity, contract, tort or otherwise.**

**Confirmation of this Plan shall constitute the Court's approval, pursuant to Federal Rule of Bankruptcy Procedure 9019, of the releases provided in this section VII of the Plan,**

**and further shall constitute the Court's finding that the releases are: (a) in exchange for the good and valuable consideration provided by each Released Party under this Plan; (b) a good-faith settlement and compromise of the Claims released by each Released Party; (c) in the best interest of the Debtor, its estate, and all holders of Claims and interests; (d) fair, equitable, and reasonable; and (e) given and made after due notice and opportunity for hearing.**

## VIII. DISCHARGE

If the Plan is confirmed under 11 U.S.C. § 1191(a), upon Confirmation, the Debtor will be discharged from any debt that arose before Confirmation, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code.

If the Plan is confirmed under § 1191(b), as soon as practicable after completion by the Reorganized Debtor of all payments due under the Plan, the Court shall grant the Debtor a discharge of all debts provided in § 1141(d)(1)(A), and all other debts allowed under § 503 and provided for in this Plan, except for as otherwise provided in § 1192.

## IX. RESERVATION OF RIGHTS

Prior to the Effective Date, no provision of this Plan, nor any statement or provision contained herein, nor the taking of any action with respect to the Plan by the Debtor shall (i) be deemed to be an admission against interest and (ii) or be deemed to be a waiver of any rights which the Debtor might have against a Creditor. If the Effective Date does not occur, neither the Plan nor any statement contained therein may be used or relied upon in any matter in any suit, action, proceeding or controversy within or outside of this bankruptcy case.

All claims and causes of action that are not released under section VII of the Plan, including, but not limited to, claims for the avoidance and recovery of pre-petition transfers under Chapter 5 of the Bankruptcy Code, and the claims specifically mentioned in section I.E.1 of the Plan, are hereby reserved to be prosecuted by the Reorganized Debtor post-Confirmation.

## X. GENERAL PROVISIONS

### A. Retention of Jurisdiction by the Court

The Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under 11 U.S.C. § 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Claims; (iv) to resolve all issues regarding Claims objections, and any issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which the Debtor may own, including preference and fraudulent transfer causes of action.

**B. Corporate Governance**

The Reorganized Debtor shall continue to be governed in accordance with its pre-petition Articles of Incorporation and Bylaws.

**C. Default**

If there is any default under the Plan, a Creditor may file a notice of default. If the default is not cured within 30 days of a notice of default being filed with the Court, the Creditor may seek any rights available to it under the Plan and under applicable law. A default under the Plan shall only be deemed to occur if a distribution to be made under section III of the Plan is not timely distributed.

**D. Successors & Assigns**

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit or detriment of any heir, executor, successor or assign, officer, manager, director, agent, representative, beneficiary, or guardian, if any, of each entity.

**E. Notices**

Notices to the Debtor and Reorganized Debtor may be sent by United States first class mail to:

Pete's Fine Meats, Inc.
5509 Richmond Avenue
Houston, Texas 77056.

With a copy by e-mail to:

Broocks 'Mack' Wilson
mack.wilson@keanmiller.com

By: ________________________________________
Name: Michael Cruz
Title: President
Dated: June 24, 2023

## EXHIBIT A – LIQUIDATION ANALYSIS

The following page contains an illustrative liquidation analysis (the "Liquidation Analysis") that: 1) shows what the Debtor believes it would receive for its assets under a hypothetical liquidation under chapter 7 of the Bankruptcy Code; 2) estimates of what the Debtor's creditors would receive in this hypothetical chapter 7 liquidation; and 3) compares the recoveries for the Debtor's unsecured creditors under this hypothetical chapter 7 liquidation to their recoveries under the Plan.

| **Asset (at Estimated Liquidation Value)** | |
|---|---|
| Funds in Deposit Accounts | $9,119.48 |
| Inventory | $47,500.00 |
| Equipment | $30,000.00 |
| Other Intangibles (e.g., claims, IP) | $0.00 |
| ***Total Assets at Est. Liquidation Value*** | ***$86,619.48*** |
| | |
| ***Less Secured Recoveries*** | ***($7,122.89)*** |
| Harris County (est. claim: $7,122.89) | *($7,122.89)* |
| | |
| ***Less Priority Claims (est. claims: $70,000)*** | ***($70,000.00)*** |
| | |
| **Balance for unsecured Claims under Ch. 7** | **$9,496.59** |
| **Payments to Unsecured Creditors under Plan** | **$126,000.00** |
| **Total Unsecured Claims under Plan** | **$190,602.07** |
| | |
| **% Recovery for unsecured Creditors in Ch. 7** | **4.98%** |
| **% Recovery for Unsecured Creditors in Plan** | **66.11%** |

**EXHIBIT B – PROJECTIONS**

The following pages show projections for Debtor's monthly performance for calendar years 2023, 2024, 2025, and 2026. These projections reflect the Debtors' estimates of future income and expenses under the Debtor's current operations. They are based on the Debtor's historical results, the Debtor's knowledge of its business and the retail meat market, and the Debtor's expectations regarding general economic conditions. Although these projections are made in good faith, the Debtors necessarily had to make several assumptions regarding the Debtors' future performance and can provide no assurance that the projections will be realized. Moreover, for some of the Debtor's projected itemized expenses, the Debtor has provided consistent, "smoothed" estimates, however it is likely that there will be significant variance in specific itemized expenditures on a month-to-month basis.

| | Jul-23 | Aug-23 | Sep-23 | Oct-23 | Nov-23 | Dec-23 | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Sales** | **$ 91,171** | **$ 128,970** | **$ 86,059** | **$ 116,893** | **$ 138,262** | **$ 268,107** | **$ 112,609** | **$ 123,679** | **$ 115,138** | **$ 109,525** | **$ 99,346** | **$ 126,342** | |
| **COGS** | $ 50,144 | $ 70,934 | $ 47,332 | $ 64,291 | $ 76,044 | $ 147,459 | $ 61,935 | $ 68,023 | $ 63,326 | $ 60,239 | $ 54,640 | $ 69,488 | |
| **Gross** | **$ 41,027** | **$ 58,037** | **$ 38,727** | **$ 52,602** | **$ 62,218** | **$ 120,648** | **$ 50,674** | **$ 55,656** | **$ 51,812** | **$ 49,286** | **$ 44,706** | **$ 56,854** | |
| | | | | | | | | | | | | | |
| **Operating** | | | | | | | | | | | | | |
| Officer Payroll | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | |
| Employee Payroll | $ 5,200 | $ 5,200 | $ 5,200 | $ 5,200 | $ 5,200 | $ 5,200 | $ 5,200 | $ 5,200 | $ 5,200 | $ 5,200 | $ 5,200 | $ 5,200 | |
| Taxes | $ 1,882 | $ 1,882 | $ 1,882 | $ 1,882 | $ 1,882 | $ 1,882 | $ 3,382 | $ 1,882 | $ 1,882 | $ 1,882 | $ 1,882 | $ 1,882 | |
| Contractors | $ 15,380 | $ 15,380 | $ 15,380 | $ 15,380 | $ 15,380 | $ 23,070 | $ 15,380 | $ 15,380 | $ 15,380 | $ 15,380 | $ 15,380 | $ 15,380 | |
| Rental | $ 17,269 | $ 17,269 | $ 17,269 | $ 17,269 | $ 17,269 | $ 17,269 | $ 17,269 | $ 17,269 | $ 17,269 | $ 17,269 | $ 17,269 | $ 17,269 | |
| Miscellany | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | |
| Insurance | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | |
| Utilities | $ 2,579 | $ 3,649 | $ 2,435 | $ 3,307 | $ 3,911 | $ 7,585 | $ 3,186 | $ 3,499 | $ 3,257 | $ 3,098 | $ 2,810 | $ 3,574 | |
| **Total Expenses** | **$ 50,060** | **$ 51,129** | **$ 49,915** | **$ 50,788** | **$ 51,392** | **$ 62,756** | **$ 52,167** | **$ 50,980** | **$ 50,738** | **$ 50,579** | **$ 50,291** | **$ 51,055** | |
| | | | | | | | | | | | | | |
| **Net Profit/Loss** | **$ (9,033)** | **$ 6,907** | **$ (11,189)** | **$ 1,814** | **$ 10,826** | **$ 57,893** | **$ (1,492)** | **$ 4,676** | **$ 1,074** | **$ (1,293)** | **$ (5,586)** | **$ 5,799** | $ 60,395 |
| | | | | | | | | | | | | | |
| **Cash** | **$ 3,467** | **$ 10,374** | **$ (815)** | **$ 999** | **$ 11,825** | **$ 19,718** | **$ 18,225** | **$ 22,901** | **$ 20,975** | **$ 19,682** | **$ 14,096** | **$ 16,895** | |
| | | | | | | | | | | | | | |
| **Effective Date Payments** | | | | | | **$50,000.00** | | | | | | | |
| | | | | | | | | | | | | | |
| **Payments to Creditors** | | | | | | | | | **$3,000.00** | | | **$3,000.00** | |

| | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Sales** | **$ 96,641** | **$136,708** | **$ 91,223** | **$123,907** | **$146,558** | **$ 284,193** | **$119,366** | **$131,100** | **$122,046** | **$116,097** | **$105,307** | **$133,923** | |
| **COGS** | $ 53,153 | $ 75,190 | $ 50,172 | $ 68,149 | $ 80,607 | $ 156,306 | $ 65,651 | $ 72,105 | $ 67,125 | $ 63,853 | $ 57,919 | $ 73,657 | |
| **Gross** | **$ 43,489** | **$ 61,519** | **$ 41,050** | **$ 55,758** | **$ 65,951** | **$ 127,887** | **$ 53,714** | **$ 58,995** | **$ 54,921** | **$ 52,243** | **$ 47,388** | **$ 60,265** | |
| | | | | | | | | | | | | | |
| **Operating** | | | | | | | | | | | | | |
| Officer Payroll | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | |
| Employee Payroll | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | $ 5,500 | |
| Taxes | $ 1,951 | $ 1,951 | $ 1,951 | $ 1,951 | $ 1,951 | $ 1,951 | $ 3,451 | $ 1,951 | $ 1,951 | $ 1,951 | $ 1,951 | $ 1,951 | |
| Contractors | $ 16,000 | $ 16,000 | $ 16,000 | $ 16,000 | $ 16,000 | $ 24,000 | $ 16,000 | $ 16,000 | $ 16,000 | $ 16,000 | $ 16,000 | $ 16,000 | |
| Rental | $ 18,269 | $ 18,269 | $ 18,269 | $ 18,269 | $ 18,269 | $ 18,269 | $ 18,269 | $ 18,269 | $ 18,269 | $ 18,269 | $ 18,269 | $ 18,269 | |
| Miscellany | $ 1,100 | $ 1,100 | $ 1,100 | $ 1,100 | $ 1,100 | $ 1,100 | $ 1,100 | $ 1,100 | $ 1,100 | $ 1,100 | $ 1,100 | $ 1,100 | |
| Insurance | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | |
| Utilities | $ 2,734 | $ 3,867 | $ 2,581 | $ 3,505 | $ 4,146 | $ 8,040 | $ 3,377 | $ 3,709 | $ 3,453 | $ 3,284 | $ 2,979 | $ 3,789 | |
| **Total Expenses** | **$ 52,354** | **$ 53,487** | **$ 52,200** | **$ 53,125** | **$ 53,766** | **$ 65,660** | **$ 54,497** | **$ 53,329** | **$ 53,072** | **$ 52,904** | **$ 52,599** | **$ 53,408** | |
| | | | | | | | | | | | | | |
| **Net Profit/Loss** | **$ (8,865)** | **$ 8,031** | **$ (11,150)** | **$ 2,633** | **$ 12,185** | **$ 62,227** | **$ (782)** | **$ 5,666** | **$ 1,848** | **$ (661)** | **$ (5,211)** | **$ 6,857** | $ 72,779 |
| | | | | | | | | | | | | | |
| **Cash** | **$ 8,030** | **$ 16,061** | **$ 1,911** | **$ 4,544** | **$ 16,729** | **$ 45,957** | **$ 45,174** | **$ 50,841** | **$ 49,689** | **$ 49,028** | **$ 43,818** | **$ 47,674** | |
| | | | | | | | | | | | | | |
| **Effective Date Payments** | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **Payments to Creditors** | | | **$3,000.00** | | | **$33,000.00** | | | **$3,000.00** | | | **$3,000.00** | |

| | Jul-25 | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 | Jan-26 | Feb-26 | Mar-26 | Apr-26 | May-26 | Jun-26 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Sales** | **$102,440** | **$144,911** | **$ 96,696** | **$131,341** | **$155,351** | **$ 301,245** | **$126,527** | **$138,966** | **$129,369** | **$123,062** | **$111,625** | **$141,958** | |
| **COGS** | $ 56,342 | $ 79,701 | $ 53,183 | $ 72,238 | $ 85,443 | $ 165,685 | $ 69,590 | $ 76,431 | $ 71,153 | $ 67,684 | $ 61,394 | $ 78,077 | |
| **Gross** | **$ 46,098** | **$ 65,210** | **$ 43,513** | **$ 59,103** | **$ 69,908** | **$ 135,560** | **$ 56,937** | **$ 62,535** | **$ 58,216** | **$ 55,378** | **$ 50,231** | **$ 63,881** | |
| | | | | | | | | | | | | | |
| **Operating** | | | | | | | | | | | | | |
| Officer Payroll | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | |
| Employee Payroll | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | |
| Taxes | $ 2,066 | $ 2,066 | $ 2,066 | $ 2,066 | $ 2,066 | $ 2,066 | $ 3,566 | $ 2,066 | $ 2,066 | $ 2,066 | $ 2,066 | $ 2,066 | |
| Contractors | $ 17,000 | $ 17,000 | $ 17,000 | $ 17,000 | $ 17,000 | $ 25,500 | $ 17,000 | $ 17,000 | $ 17,000 | $ 17,000 | $ 17,000 | $ 17,000 | |
| Rental | $ 19,269 | $ 19,269 | $ 19,269 | $ 19,269 | $ 19,269 | $ 19,269 | $ 19,269 | $ 19,269 | $ 19,269 | $ 19,269 | $ 19,269 | $ 19,269 | |
| Miscellany | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | $ 1,250 | |
| Insurance | $ 900 | $ 900 | $ 900 | $ 900 | $ 900 | $ 900 | $ 900 | $ 900 | $ 900 | $ 900 | $ 900 | $ 900 | |
| Utilities | $ 2,898 | $ 4,100 | $ 2,736 | $ 3,716 | $ 4,395 | $ 8,522 | $ 3,579 | $ 3,931 | $ 3,660 | $ 3,481 | $ 3,158 | $ 4,016 | |
| **Total Expenses** | **$ 55,383** | **$ 56,584** | **$ 55,220** | **$ 56,200** | **$ 56,879** | **$ 69,507** | **$ 57,564** | **$ 56,416** | **$ 56,144** | **$ 55,966** | **$ 55,642** | **$ 56,500** | |
| | | | | | | | | | | | | | |
| **Net Profit/Loss** | **$ (9,285)** | **$ 8,626** | **$ (11,707)** | **$ 2,903** | **$ 13,029** | **$ 66,054** | **$ (627)** | **$ 6,119** | **$ 2,072** | **$ (588)** | **$ (5,411)** | **$ 7,381** | $ 78,565 |
| | | | | | | | | | | | | | |
| **Cash** | **$ 38,390** | **$ 47,016** | **$ 32,309** | **$ 35,212** | **$ 48,241** | **$ 81,294** | **$ 80,668** | **$ 86,786** | **$ 85,858** | **$ 85,270** | **$ 79,859** | **$ 84,240** | |
| | | | | | | | | | | | | | |
| **Effective Date Payments** | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **Payments to Creditors** | | | **$3,000.00** | | | **$33,000.00** | | | **$3,000.00** | | | **$3,000.00** | |

| | Jul-26 | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 | |
|---|---|---|---|---|---|---|---|
| **Sales** | **$108,586** | **$153,605** | **$102,498** | **$139,221** | **$164,672** | **$ 319,320** | |
| **COGS** | $ 59,722 | $ 84,483 | $ 56,374 | $ 76,572 | $ 90,570 | $ 175,626 | |
| **Gross** | **$ 48,864** | **$ 69,122** | **$ 46,124** | **$ 62,650** | **$ 74,103** | **$ 143,694** | |
| | | | | | | | |
| **Operating** | | | | | | | |
| Officer Payroll | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | |
| Employee Payroll | $ 6,250 | $ 6,250 | $ 6,250 | $ 6,250 | $ 6,250 | $ 6,250 | |
| Taxes | $ 2,123 | $ 2,123 | $ 2,123 | $ 2,123 | $ 2,123 | $ 2,123 | |
| Contractors | $ 18,000 | $ 18,000 | $ 18,000 | $ 18,000 | $ 18,000 | $ 27,000 | |
| Rental | $ 20,269 | $ 20,269 | $ 20,269 | $ 20,269 | $ 20,269 | $ 20,269 | |
| Miscellany | $ 1,300 | $ 1,300 | $ 1,300 | $ 1,300 | $ 1,300 | $ 1,300 | |
| Insurance | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | |
| Utilities | $ 3,072 | $ 4,345 | $ 2,900 | $ 3,939 | $ 4,659 | $ 9,034 | |
| **Total Expenses** | **$ 58,014** | **$ 59,287** | **$ 57,842** | **$ 58,880** | **$ 59,600** | **$ 72,975** | |
| | | | | | | | **Totals** |
| **Net Profit/Loss** | **$ (9,150)** | **$ 9,835** | **$ (11,718)** | **$ 3,769** | **$ 14,502** | **$ 70,718** | $ 77,957 |
| | | | | | | | |
| **Cash** | **$ 75,090** | **$ 84,925** | **$ 70,207** | **$ 73,976** | **$ 88,478** | **$ 126,197** | |
| | | | | | | | |
| **Effective Date Payments** | | | | | | | |
| | | | | | | | |
| **Payments to Creditors** | | | **$3,000.00** | | | **$33,000.00** | |